IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
                                                                : CASE NO. 1:10 CV 00861
O.M.A., S.r.l.,                                            :

                                        Plaintiff,  : <u>MEMORANDUM AND ORDER</u>
                                                       : <u>ACCEPTING IN PART AND</u>
                    -vs-                         : <u>REJECTING IN PART THE</u>
                                                       : <u>MAGISTRATE JUDGE'S REPORT AND</u>
                                                       : <u>RECOMMENDATION</u>
SIMON DeYOUNG CORP., et al.,      :

                            Defendants.  :
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      This matter was referred to United States Magistrate Judge Kenneth S. McHargh pursuant to Local Rule 72.2 for recommendations as to the defendants' partial motion for summary judgment and the plaintiff's partial motion for summary judgment. The Magistrate Judge recommended that the defendants' motion be granted and that the plaintiff's motion be denied. For the reasons that follow, the recommendations of the Magistrate Judge are accepted in part. The defendants' motion for partial summary judgment is granted as to counts 2, 4, and 9, but will be otherwise denied. The plaintiff's motion will be denied.

**I. Background**

The plaintiff O.M.A, S.r.l. ("OMA"), an Italian firm, is the designer and manufacturer of the OMA 240 FRC Braiding Machine, a machine that braids wire and other products. (Doc. 44, ¶¶4-5). Defendant Simon DeYoung Company ("SDC") builds a complementary product known as a "carrier," which holds spools of braiding filament used in braiding machines like OMA's. (Doc. 78, ¶¶12, 28). Defendant Simon DeYoung is the CEO of SDC. (Doc. 78, ¶3). In the late nineteen-eighties, the two companies entered into a business relationship, bringing their products together as a "complete package." (Doc. 77, p. 2; Doc. 21, ¶5). OMA invested in SDC by executing a Stock Purchase Agreement; the parties executed a Sales Agency Agreement; and they entered into a number of License Agreements. (Doc. 21, ¶6). The parties agreed that SDC would act as OMA's exclusive sales agent, and because the parties were to have access to one another's confidential information, they agreed that each party would "preserve the confidentiality of such information and not disclose information to any other person or entity." (Doc. 44, Ex. B, p. 16). SDC was provided with one of OMA's Type 240 Braiding Machines, which was housed in SDC's warehouse. (Doc. 77-6, p. 178; Doc. 77- 5, p. 211). SDC was also given access to spare machine parts, manuals, and other confidential documents about OMA's braiding machine. (Doc. 77-6, pp. 178-79, 187-88, 205; Doc. 77-5, pp. 115-16).

OMA maintains that its braiding machine contains trade secrets "which include the highly proprietary design and manufacturing specifications, combination of components, techniques, and processes used to manufacture and operate the OMA 240 FRC braiding machine." (Doc. 77, p. 3). OMA states that it has taken appropriate

and reasonable measures to safeguard its trade secrets, and that it was only through the parties' business relationship that the defendants had access to them. (Doc. 77, pp. 3-4). The defendants do not dispute that "OMA has trade secret rights in the design, configuration, materials, and methods of production of the OMA Type 240 braiding machine." (Doc. 84, p. 6).

Many years after the parties began their relationship, Mr. DeYoung and SDC formed another entity, defendant Ohio Braiding Machinery, LLC ("OBM"), without the knowledge of OMA. (Doc. 77-5, pp. 130-33). Through this company, the defendants designed and manufactured a braiding machine, which, the plaintiff maintains, incorporates the confidential and proprietary information and trade secrets embodied in OMA's 240 FRC braiding machine. OMA contends that this information was obtained by the defendants as a result of the parties' business relationship.

The plaintiff brought this suit in nine counts, alleging (1) breach of contract in relation to the Licensing Agreement; (2) breach of contract as to the Sales Agency agreement; (3) misappropriation of trade secrets; (4) conversion; (5) breach of fiduciary duty; (6) false advertising; (7) misrepresentation; (8) tortious interference; and (9) unjust enrichment.

The defendants seek partial summary judgment on counts 1-4, and 9. The plaintiffs seek partial summary judgment on counts 3, 5, and 9. On referral, the Magistrate Judge recommended granting the defendants' motion and denying the plaintiff's. The plaintiff has filed objections and the defendant has responded. On de novo review, the Court concludes that the plaintiff's objections are meritorious in part. Therefore, the recommendation that the defendants' motion be granted as to counts 1

3

and 3 is not adopted by the Court. The Magistrate Judge's recommendations are otherwise accepted.

**II. Applicable Standards**

This Court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Rule 72.3(b). The failure by either party to file specific objections constitutes a waiver of the right to appeal the magistrate's recommendations. Thomas v. Arn, 474 U.S. 140, 155 (1985); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508–09 (6th Cir.1991). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir.1995). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." Cole v. Yukins, 7 F. App'x. 354, 356 (6th Cir.2001) (citing Miller, 50 F.3d at 380).

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)).

**III. Discussion**

    **A. The Defendants' Motion for Partial Summary Judgment**

        *Counts 1 & 3*

The plaintiff's claims of breach of confidentiality (count 1) and trade secret misappropriation (count 3) are both premised on the allegation that the defendants incorporated the plaintiff's trade secrets and proprietary information into the defendants' braiding machine. The Magistrate Judge employed the same reasoning in determining that summary judgment was appropriate as to each claim. Therefore, for present purposes, Counts 1 and 3 will be addressed together.

Count 1 of the amended complaint specifically alleges that the defendants breached the licensing agreement by disclosing OMA's "confidential information and technology and trade secrets for purposes of the development, manufacture, and marketing of the OBM Knock-Off Machine." (Doc. 44, ¶58). Count 3 alleges that the defendants, being "aware of the confidential and proprietary nature of Plaintiff's trade secrets, have misappropriated and unlawfully used Plaintiff's trade secrets – through improper means – to design, manufacture, and market the OBM Knock-Off Machine. (Doc. 44, ¶70).

In discovery, the defendants sought specifics as to the trade secrets and proprietary information that were improperly disclosed. The plaintiff informed the defendants that the plaintiff's

> trade secrets and other confidential and proprietary information were
> misappropriated and stolen by the Defendants from Plaintiff in their entirety when

5

> the Defendants decided to copy Plaintiff's machine and information and then design, manufacture, and market the OBM Knock -Off Machine.

(Doc. 75, p. 6). The plaintiffs also explained that

> OMA considers the entire OMA Type 240 braiding machine itself, as well as its underlying concepts, designs, developments, engineering, component sizing, material selection, and every other tangible and intangible element and process of such machine, proprietary. Furthermore, OMA considers its design strategies, procedures, machine testing processes, function, and development and improvements over time proprietary. . . . The entire machine along with each and every concept, component, and process are considered proprietary.

(Doc. 75, p. 7).

Based on these responses, the defendants concluded that the plaintiff's claims of misappropriation and improper use of confidential information are limited to the defendants having incorporated "the entirety of the technology of the OMA machine into the OBM 240-H machine." (Doc. 75, p. 9). The defendants accordingly argued that with the plaintiff's claim framed so broadly, summary judgment was appropriate because the defendants' evidence showed that the two machines were materially different. The defendants provided the declaration of Mr. DeYoung which cited a number of specific differences, such as the configuration of the track systems, the construction of the horn gears, the type of bearings used, and others. (Doc. 75, *passim*). Because of these numerous differences, the defendants argued that no rational jury could conclude that they misappropriated the OMA machine in its entirety.

The plaintiff responded in opposition but offered no specific evidence to rebut the existence or materiality of the differences cited by the defendant. Instead, the plaintiff provided an expert report with the more general conclusion that the defendants' machine was "definitely a knock-off copy of the OMA braiding machine (Type 240)." The

6

plaintiff further offered a document that summarizes the features of the OMA machine that the plaintiff claims are trade secrets or are confidential and proprietary, both individually and in combination. (Doc. 65-2). This document, entitled "Summary Listing of OMA SRL's Trade Secrets," compares the components of the OMA machine with those of the OBM machine, and it indicates that of the components of the OMA machine that are listed, most are the same as those utilized in the OBM machine. The plaintiff also claimed that Mr. DeYoung admitted in deposition that he surreptitiously created OBM, LLC in 2009 without telling OMA, SDC's minority shareholder. (Doc. 80, p. 6). The plaintiff also stated that Mr. DeYoung admitted that he had secretly been working on the so-called "knock-off machine" for years unbeknownst to OMA. (Doc. 80, p. 6).

The Magistrate Judge considered the defendant's motion on referral and advised that it be granted as to Counts 1 and 3. The Magistrate Judge's recommendation was premised on the view that the plaintiff's breach of confidentiality and misappropriation claims were limited to the question whether the defendant had incorporated "the entirety of the technology of the OMA machine into the OBM 240-H machine." (Doc. 98, p. 12). The Magistrate Judge concluded that the defendants met their initial burden on summary judgment by pointing out that the OBM 240-H machine is different from the OMA machine in a number of material respects. Because the plaintiff did not provide evidence that questioned the existence or materiality of the specific differences asserted by the defendant, the Magistrate Judge concluded that the plaintiff had not met its burden to show that the material facts are in dispute. Since it was undisputed that the machines were materially different, the Magistrate Judge concluded that no rational jury could find that the plaintiff's trade secrets and confidential information were

7

misappropriated in their entirety. The Magistrate Judge accordingly recommended that summary judgment be granted as to Counts 1 and 3. (See Doc. 98, pp. 15- 25).

The Court respectfully disagrees with this analysis. The analysis operates on the assumption that the various differences cited by the defendants are material to the disposition of the plaintiff's claims. On summary judgment, it is the moving party's burden to demonstrate that there is no genuine issue of *material* fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is material when it "affect[s] the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this instance, the defendants do not reference the substantive law. They only offer the unsupported conclusion that the differences between the two machines foreclose the need for a trial. Mr. DeYoung, who built the defendants' machine, is certainly qualified to point out the various differences between the two machines, but the materiality of those differences is a legal question to be answered with reference to the underlying law. The defendants ask the Court to take them at their word that the differences are material, without consideration of any guiding legal principle. The Court declines this invitation and concludes that the defendants have not met their burden on summary judgment.

Further, although the defendants generally take issue with the broadness of the plaintiff's claim that its trade secrets and other proprietary and confidential information were stolen "in their entirety," the plaintiff's position is recognized under Ohio law. Subject to other requirements not relevant here, Ohio law defines a "trade secret" as "information, including *the whole* or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device,

8

method, technique, or improvement . . . ." Ohio Rev. Code § 1333.61 (emphasis added). Moreover, there appears to be some flexibility as to whether a machine "as a whole" is a trade secret.  One Ohio court recognized that a machine "as a whole" may be unique even though "certain components of the design [are] readily ascertainable." Columbus Steel Castings Co. v. Alliance Castings Co., L.L.C., 2011-Ohio-6826 (Ohio Ct. App. Dec. 30, 2011). A machine may be protected "in its entirety" even though particular elements of the machine are not protected. In light of this authority and in the absence of any authority to support the defendants' position that the differences between the two machines are dispositive of the plaintiff's claims, the Court is not persuaded that the defendants are entitled to judgment as a matter of law.

Furthermore, while the burden technically has not shifted to the plaintiff, the Court observes that the plaintiff has produced evidence by which a reasonable fact finder could find for it on this issue. The determination whether information constitutes a trade secret "is a highly fact-specific inquiry." DeBoer Structures Inc. v. Shaffer Tent & Awning Co., 233 F.Supp.2d 934, 948 (S.D. Ohio 2002). In this instance, the defendants do not dispute that the plaintiff "has trade secret rights in the design, configuration, materials, and methods of production of the OMA Type 240-H braiding machine." (Doc. 84, p. 6). The plaintiff provides evidence to show that the defendants did incorporate the plaintiff's trade secrets into their machine. The plaintiff's expert, who took measurements of the dimensions of the internal components of the defendant's braiding machine using a precision micrometer, opined that the OBM machine is a "knock-off copy," and he noted a "close duplication of nearly all the essential internal machine component nominal dimensions of the OBM machine . . . when compared to the OMA

9

machine component dimensions." The Magistrate Judge correctly observed that this expert opinion supports the conclusion that the defendants reverse engineered the plaintiff's machine. If it were so proven at trial, the act of reverse engineering the plaintiff's machine would amount to a violation of the parties' confidentiality agreement and/or a misappropriation of trade secrets.

In addition, the plaintiff's Summary Listing of Trade Secrets provides a detailed list of purported trade secrets contained in the OMA machine along with their analogues contained in the defendants' machine. This also supports the conclusion that the defendants violated the confidentiality agreement and misappropriated the plaintiff's trade secrets.

For these reasons, the Court respectfully declines to accept the Magistrate Judge's recommendation as to Counts 1 and 3 of the amended complaint. As to Counts 1 and 3, summary judgment accordingly will be denied.

*Count 2*

In Count 2 of the Amended Complaint, the plaintiff alleges that the defendants are in breach of the "Cessation of Use" terms of the Sales Agency Agreement. This part of the agreement requires that the defendants "cease manufacturing and/or incorporating into a product manufactured by Simon DeYoung, the track system manufactured by OMA, or any product that would be considered a development and/or improvement to said track system."

The Magistrate Judge concluded that summary judgment was appropriate as to this claim because the plaintiff failed to provide any evidence that the defendants had manufactured or incorporated OMA's track system into a Simon DeYoung product. The

Magistrate Judge also noted that, according to the defendants, "the 1991 Sales Agreement terminated in 1996, [ ] OMA began to use a new track system in 1998, and [ ] the track system used in the OBM machine is completely distinct from the track system used in the relevant period governed by the Sales Agreement." (Doc. 98, p. 26). The plaintiff objects to this recommendation by arguing that there is evidence that the defendants "contributed to the manufacture of a braiding machine that could easily be observed to have incorporated confidential information which [the defendants] specifically acknowledged they received from OMA."

This objection is overruled. The plaintiff fails to provide any evidence by which a jury could conclude that the defendants violated the specific provision relating to OMA's track system. "Where there is not sufficient evidence for a jury to return a verdict for the non-moving party, summary judgment should be granted." Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986). Summary judgment accordingly will be granted as to this count.

*Counts 4 & 9*

The Magistrate Judge recommended granting the defendants' motion as to counts 4 and 9, because those claims are preempted by Ohio statute. Because the plaintiff does not object to this conclusion, the recommendation will be accepted.

**B. The Plaintiff's Partial Motion for Summary Judgment**

The plaintiff moved for partial summary judgment on Counts 3, 5, and 9.[1] The Magistrate Judge recommended denying the motion. The plaintiff objects only with respect to Count 5, breach of fiduciary duty. The plaintiff argues that as CEO and majority shareholder of SDC, Mr. DeYoung owed the plaintiff the highest duty of good faith, loyalty, honesty and fairness. The plaintiff maintains that that duty was breached when Mr. DeYoung engaged in self-dealing, misuse of corporate resources, stealing business opportunities, and failing to disclose activities that would adversely affect the plaintiff's business, among other things.

To prove breach of fiduciary duty, the plaintiff must demonstrate (1) the existence of a duty arising from a fiduciary relationship; (2) failure to observe the duty; and (3) an injury arising proximately therefrom. Evans v. Chambers Funeral Homes, Cuyahoga App. 89900, 2008-Ohio-3554. A "fiduciary" has been defined as a "person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." Strock v. Pressnell (1998), 38 Ohio St. 3d 207. As noted by the Magistrate Judge, when the party moving for summary judgment would bear the burden of proof at trial, the movant "must present evidence that would entitle [it] to a directed verdict if that evidence were not controverted at trial." (Doc. 98, p. 35).

In making its motion, the plaintiff argued that Mr. DeYoung breached his fiduciary duty to OMA by establishing OBM, а separate corporation, to manufacture and sell the

---

[1] As discussed above, the facts are in dispute in relation to Count 3, and the Court has accepted the Magistrate Judge's recommendation that Count 9 is preempted by Ohio law. Therefore, the plaintiff's motion for summary judgment as to each of these counts is denied.

12

"knock off" machines, and providing OBM with SDC's employees, equipment, and funding in order to create the "knock off" machine. (Doc. 77, pp. 17-18). The Magistrate Judge concluded that the facts are in dispute as to whether Mr. DeYoung breached his duty to the plaintiff, since the defendants provided countervailing evidence that when he created OBM, Mr. DeYoung was acting in the best interests of SDC and, by extension, OMA.

In the Court's view, the Magistrate Judge correctly concluded that the facts are in dispute on this issue. According to the defendants, the formation of OBM

> (a) shielded SDC from potential legal liabilities associated with the operation of braiding machines; (b) . . . it shielded SDC from potential financial losses should the new business under OBM not succeed; and (c) it provided SDC with a new source of revenue from the sale of machine components to OBM should the new business succeed.

(Doc. 81, p. 7). In support of the third justification, Mr. DeYoung provides evidence that OBM pays SDC $10,000 for each machine sold in exchange for using SDC's services. (Doc. 83, ¶8). Mr. DeYoung also noted that he was motivated to create OBM because he expected losses in revenue to SDC after the termination of the 2005 license agreement between OMA and SDC. There is evidence that SDC's sales revenue from selling services and components to OBM made up for lost revenue from OMA. According to SDC's accountant, SDC's revenue from OBM rose to nearly $600,000 in the year 2012. As noted by the defendant, a majority shareholder must act in good faith, "with a single eye to the best interests of the corporation." Crosby v. Beam, 47 Ohio St. 3d 105, 109 (1989). Based on the above-cited evidence, a rational jury could conclude that Mr. DeYoung did so. Therefore, because the facts are disputed on this issue, the

13

Court accepts the Magistrate Judge's recommendation that the plaintiff's motion for partial summary judgment be denied.

### III. Conclusion

For the reasons stated above, the Magistrate Judge's recommendations are accepted in part and rejected in part. The defendants' motion for partial summary judgment is granted as to Counts 2, 4, and 9, but is denied as to Counts 1 and 3. The plaintiff's motion for partial summary judgment is denied.

IT IS SO ORDERED.

                                           /s/ Lesley Wells  
                                           UNITED STATES DISTRICT JUDGE

Date: 14 February 2014