UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| O.M.A., S.r.l., | ) | 1:10CV0861 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| SIMON DeYOUNG CORP., | ) | |
| et al., | ) | |
| | ) | |
| Defendants | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. J.

The matter is currently before the undersigned Magistrate Judge for the purpose of determining the amount of damages that plaintiff can prove to a reasonable certainty. (Doc. 124, at 2.)

The plaintiff O.M.A., S.r.l. ("OMA"), an Italian corporation[1], had filed a First Amended Complaint (hereinafter, simply "complaint") against defendants Simon DeYoung Corp. ("SDC"), Simon DeYoung ("DeYoung"), Ohio Braiding Machinery, LLC ("OBM"), and unnamed John Does. (Doc. 44.) The complaint alleged nine counts against the defendants:

    1. Breach of license agreements, against defendant Simon DeYoung Corp.;

    2. Breach of sales agency agreement, against defendant Simon DeYoung Corp.;

---

[1] The Italian abbreviation "S.r.l." stands for "Società a responsibilità limitata," roughly equivalent to an American "Limited Liability Corporation."

3. Misappropriation of trade secrets and confidential and proprietary information and technology, against all defendants;

4. Conversion, against all defendants;

5. Breach of fiduciary duties, self-dealing, misuse of corporate resources and funds, theft of business opportunities, and diminishment of business assets, against defendants Simon DeYoung Corp. and Simon DeYoung;

6. False advertising, against all defendants;

7. Misrepresentations, against all defendants;

8. Tortious interference, against all defendants; and,

9. Unjust enrichment.

(Doc. 44.) The named defendants filed an Answer and Counterclaims. (Doc. 48.)

On Aug. 14, 2012, the named defendants filed a motion for partial summary judgment, seeking judgment on counts 1-4 and 9 of the complaint. (Doc. 74-75.) On that same date, OMA also filed a motion for partial summary judgment, seeking judgment on counts 3, 5, and 9. (Doc. 73, 77.)

On Feb. 14, 2014, the court, after consideration of a Report and Recommendation (doc. 98), and the parties' subsequent objections thereto, issued an Order granting defendants' motion for partial summary as to Counts 2, 4, and 9, but denying the motion as to Counts 1 and 3. The court also denied plaintiff's motion for partial summary judgment. (Doc. 107, at 14.)

A trial date was then set for September 2014. (Doc. 108.) In July 2014, a mediation conference was held, and the parties continued their settlement conversations for several weeks after that conference. Eventually, however, the

2

parties reported to the court on Aug. 13, 2014, that continued efforts at mediation would not be fruitful. Thus, a new trial date was set for February 9, 2015. (Doc. 119.)

On Feb. 6, 2015, the court granted defendants' unopposed motion (doc. 120) to continue the final pretrial conference because the parties were working to finalize a settlement agreement. The following week, however, the court was advised at a telephone conference that plaintiff intended to file a motion for default judgment.

The motion for default judgment was filed against the defendants on February 13, 2015, and the Clerk of Court entered default against the defendants that same day. (Doc. 122, 123.)

In considering the motion for default judgment, the court determined that plaintiff's claim was not for a sum that can be made certain by mere mathematical calculation, thus the matter was referred to the undersigned for a determination of the amount of damages that plaintiff can prove to a reasonable certainty. (Doc. 124, at 2.) A telephone conference was held on the matter on April 10, 2015, and counsel for defendants advised that he would not be defending against damages, although counsel wanted the opportunity to review the documentary evidence submitted by the plaintiff.

At the phone conference, plaintiff was instructed to submit a brief supported by written and documentary evidence, including the report of a forensic accountant, in support of the claim(s) for damages to the court. Defendant was given two weeks, after the submission of the brief, to review it and file any rebuttal or objections.

Plaintiff OMA submitted its brief in support of its claims for damages (doc. 125), but no rebuttal or objections have been filed by defendants. Thus, the matter is ripe for determination.

In summary, OMA submits a claim for damages in the amount of two million, five hundred eleven thousand, and six hundred thirty-six dollars ($2,511,636.00), jointly and severally, against defendants Simon DeYoung Corp.; Ohio Braiding Machinery, LLC; and Simon Arden DeYoung. (Doc. 125, at 1.)

## I. DEFAULT AND DAMAGES

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D. N.Y. 1996) (citing *Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty,* 973 F.2d 155, 158 (2d Cir.1992)); *Wing v. East River Chinese Rest.*, 884 F. Supp. 663, 669 (E.D. N.Y. 1995). Where damages are not liquidated, a default admits only the defendants' liability, and the amount of damages must be proved. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1026 (5th Cir. 1982) (en banc)); *see also Wing*, 884 F. Supp. at 669 (court is required to make independent determination of sum to be awarded).

Ordinarily, the court holds an evidentiary hearing, at which the defendant has the opportunity to contest the amount of damages. *Antoine*, 66 F.3d at 110-111

(quoting *Greyhound,* 973 F.2d at 158). Here, however, counsel for defendants advised at the April 10, 2015, telephone conference that he would not be defending against damages, although he requested the opportunity to review the documentary evidence submitted by the plaintiff.

Rule 55 gives the court the discretion to determine whether an evidentiary hearing is necessary, or whether to rely on detailed affidavits or documentary evidence to determine damages. *Stephenson v. El Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008) (need for hearing within sound discretion of district court under Rule 55); *see also Vesligaj v. Peterson*, No. 08-5942, 2009 WL 1286446, at *3 (6th Cir. May 11, 2009); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing cases); *Directv, Inc. v. Griffin*, 290 F. Supp.2d 1340, 1343 (M.D. Fla. 2003) (citing cases); *Time Warner Cable of NYC v. Foote*, No. CV-99-4974, 2002 WL 1267993, at *4 (E.D. N.Y. Mar. 22, 2002) (citing cases); *Crazy Eddie*, 948 F. Supp. at 1160.

The moving party bears the burden of providing a reasonable basis for the determination of damages. *Crazy Eddie*, 948 F. Supp. at 1160. The moving party is entitled to all reasonable inferences from the evidence it offers. *Time Warner*, 2002 WL 1267993, at *4; *Crazy Eddie*, 948 F. Supp. at 1160.

## II. PLAINTIFF OMA'S DAMAGES

Plaintiff OMA has filed a brief in support of its damages. (Doc. 125.) The brief is accompanied by the May 6, 2015, Declaration of Forensic Accountant John Davis (doc. 125, appx. A); the July 3, 2012, Expert Report of Forensic Accountant John Davis (doc. 125, appx. B); and, the July 9, 2015, Supplemental Expert Report of Forensic Accountant John Davis (doc. 125, appx. C). The defendants had the opportunity, after the submission of the brief and its supporting materials, to review it and file any rebuttal or objections, but they have not filed any rebuttal or objections within the period provided.

In summary, OMA seeks damages for (1) loss of past profit, (2) loss of future profit, (3) loss of value from lost profits to OMA, and (4) loss based upon cost of new carriers. (Doc. 125, at 9-11.) The court has reviewed the expert reports submitted, which contain the findings of a qualified expert forensic accountant, whose credentials are uncontested. The expert's conclusions, which are also uncontested, are supported by documentation which is sufficient to support the findings set forth herein. Thus, the court makes the following factual findings.

A. Loss of Past Profit

Forensic Accountant John Davis (henceforth, "Davis") calculated the loss to OMA, a 17.6% shareholder of SDC, for diversion of resources to develop the OBM 240H Braiding Machine[2] after reviewing the companies' financials, and concluded:

> . . . based on my education, professional training, and experience, to a reasonable degree of professional certainty, is that SDC has lost $252,321 of profit that has been diverted from SDC to OBM by selling the OBM machine that was developed from the resources at SDC. Furthermore, the economic impact of the loss to OMA is $44,408 based on their share ownership of 17.6%.

(Doc. 125, at 9; doc. 125, appx. B, at 11; *see generally* appx. B, at 3-11, and supporting documentation cited therein.)

The court finds that damages to OMA from lost past profit amount to $44,408.00.

B. Loss of Future Profit

Davis determined that OBM's manufacture of the OBM 240H caused continued losses to OMA as a shareholder of SDC, because profits from the sale of that machine were diverted away from SDC and into OBM, through which only DeYoung himself benefitted. To determine the value of lost profits, Davis projected sales revenue based on a 4% growth rate, using first quarter 2012 sales figures. His conclusion was:

---

[2] Davis refers to this competing product as the "Knock-Off machine." (Doc. 125, at 2, 9.)

> . . . based on my education, professional training, and experience, to a reasonable degree of professional certainty, is that SDC has lost $1,381,911 of future profit that has been diverted from SDC to OBM by continuing to sell the OBM machine that was developed from the resources at SDC. Furthermore, the economic impact of the loss to OMA is $243,216 based on their share ownership of 17.6%.

(Doc. 125, at 10; doc. 125, appx. B, at 13; *see generally* appx. B, at 11-13, and supporting documentation cited therein.)

The court finds that damages to OMA from loss of future profit amounts to $243,216.00.

### C. Loss of Value from Lost Profits to OMA

Davis determined that defendants' manufacture of the OBM 240H, in direct competition to OMA's 240 FRC Braiding Machine, caused OMA severe financial loss. To calculate the loss, Davis analyzed OBM's machine sales for the period January 1, 2009, through March 31, 2012, and applied the gross profit percentage to the revenue generated by braiding machine sales. Doing so, Davis calculated that the loss from past braiding machine sales was $242,257. Then, to calculate the total amount of the loss from future profits from braiding machine sales, Davis used a capitalized earnings approach, and determined that the present value of future loss profits is $1,766,734. Thus, he calculated the total value of lost profits to be $2,008,991.00. (Doc. 125, at 10; doc. 125, appx. B, at 16; *see generally* appx. B, at 13-16, and supporting documentation cited therein.)

8

The court finds that damages to OMA as a direct result of lost past and future profits amounts to $2,008,991.00.

### D. Loss Based Upon Cost of New Carriers

Davis pointed out that OMA had been using carriers that were manufactured by SDC for use in OMA's 240 braiding machine. Davis determined that, in addition to entering into direct competition with OMA, SDC during 2010 unilaterally increased the price and changed the purchasing terms, rendering the continued purchase of these carrier parts uneconomical for OMA. As a result, OMA was required to invest significant capital, time, and resources into developing a carrier for use in their braiding machines. (Doc. 125, at 11; doc. 125, appx. C, at 1-2.)

Davis concluded that:

> . . . based on my education, professional training, and experience, to a reasonable degree of professional certainty, that OMA Srl incurred additional costs of $125,021 that would not have been incurred otherwise had SDC not entered into direct competition with OMA and had not changed the purchasing terms.

(Doc. 125, appx. C, at 3; *see generally* appx. C, at 2, and supporting documentation cited therein.)

The court finds that damages to OMA as a result of loss based upon the cost of new carriers amounts to $215,021.00.

9

E. Summary

The court finds that the total amount of damages that plaintiff OMA can prove to a reasonable certainty is $2,511,636.00. Specifically, OMA has carried its burden of providing a reasonable basis for the determination of damages by providing a forensic accountant's analysis based upon, and supported by, detailed documentary evidence. OMA has established uncontested damages for (1) loss of past profit in the amount of $44,408.00; (2) loss of future profit in the amount of 243,216.00; (3) loss of value from lost profits to OMA in the amount of $2,008,991.00; and (4) loss based upon cost of new carriers in the amount of $125,636.00. (Doc. 125, at 11.)

RECOMMENDATION

It is recommended that the plaintiff's brief in support of its claim for damages be well-taken, as set forth above, and the amount of damages supported by the declaration and expert reports be adopted by the court for the purpose of resolving the plaintiff's motion for default judgment.


Dated:  Aug. 7, 2015                /s/ Kenneth S. McHargh
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's

order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).